**Exhibit 4**

24-035450
07/06/2024
Supplemental report
Sgt. Michael Rand

    On 07/06/2024 I Sergeant Rand contacted Detectives Aaron Curlee and Jessica Googins and asked them to respond to PPD headquarters to begin to look into this incident. I had previously spoken to LT. Goodman, who had viewed still photographs from the event and had tentatively identified the suspect as Anthony Lobor ▓▓▓ 1998. Based on their investigation the detectives were able to obtain an arrest warrant for Anthony Lobor.

    On 07/08/2024 surveillance personnel were able to identify that Anthony Lobor was currently outside of 42 Kellogg Street, which was a known potential address for him. Anthony was with several people, including very young children. Due to the potential for a violent confrontation, the surveillance team did not make immediate contact with Anthony. Anthony was observed walking into a parking lot to the southwest side of the apartment complex, which resulted in him no longer being within close proximity to the young children. At that time a marked police unit was requested to make contact with Anthony, with the support of the surveillance team.

    Officer Rollins was operating a marked PPD cruiser and drove past my location on Kellogg Street followed by LT. Goodman in an unmarked PPD cruiser. I pulled behind them in my unmarked vehicle and followed them to the lower parking lot where Anthony was last seen. I observed Officer Rollins pull into the parking lot and turn on his emergency lights. I was traveling on Kellogg Street driving towards the waterfront from Congress Street. Due to the apartment building blocking the view of the portion of the parking lot Anthony was in, I was unable to see him when Officer Rollins pulled into the lot. Almost immediately after pulling into the lot I heard Officer Rollins state on the radio, he's running. I took this to indicate that Anthony began to flee on foot as soon as he observed the marked police unit. I saw Officer Rollins exit his patrol car and begin to run to the rear of the apartment complex traveling in the direction of Congress Street.

    LT. Goodman turned his vehicle around and proceeded to drive back towards Congress Street on Kellogg Street. I turned my vehicle around and observed that LT. Goodman's vehicle was stopped in the middle of Kellogg Street just prior to the Congress Street intersection. I drove to this location and exited my vehicle. At that time I observed that LT. Goodman and Sgt. Dyer had Anthony detained. He was on the east side of Kellogg Street between Monument Street and Congress Street laying on the sidewalk. I gave a set of flex handcuffs to Sgt. Dyer at which time Anthony was handcuffed and assisted to the edge of a building foundation so that he could sit with his back against the wall. I observed three nip style alcohol bottles on the ground next to Anthony, as well as a cellular phone and a large amount of money. I placed the cellphone and cash on the front passenger seat of my vehicle in order to secure them. Anthony requested that he be allowed to consume the alcohol contained in the nip style bottles. He was told no. (**Note**: I did not identify what type of alcohol bottles these were, however based on appearance, they look to be the same brand as the nip type bottle that was later located in the

plastic bag with the FN 5.7 handgun that was recovered during the subsequent search warrant, and documented later in this report).  Due to the ongoing nature of this call, I was unable to count the money that I placed on my passenger seat.

   As soon as I knew LT. Goodman and Sgt. Dyer were no longer in need of any assistance, I drove back to the area of 42 Kellogg Street to help secure the area.  When Anthony ran from Officer Rollins, a second black male with dreadlocks who had been observed with Anthony by the surveillance units, and believed to be the same male who was with Anthony at Crown Fried Chicken on the night of the incident, had fled on foot as well.  I knew that Detective Curlee was in the process of obtaining a search warrant for 42 Kellogg Street and was concerned that the second male may attempt to return to the address.  Based on the nature of the incident, there was also concern that this male may be armed, and potentially was able to access the residence prior to it being secured.  In addition, a young boy that I am estimating to be approximately 10 years old also fled from Officer Rollins and ran into # 40 Kellogg Street.  (40 Kellogg Street is the adjoining apartment to # 42 Kellogg Street and is located to the left of # 42 when viewed from the roadway). This boy had previously been observed passing a football back and forth with Anthony and the unknown male with dreadlocks so it is believed that the residents of the two units are at a minimum cordial with each other, and potentially related.

   I requested assistance from patrol units to set a perimeter around the apartment complex in order to prevent anyone from entering # 42 Kellogg Street, and to also prevent two vehicles associated with Anthony from being accessed (note: these vehicles were later searched but nothing of value was secured from them).  I asked dispatch to research phone numbers for # 42; and to attempt to make contact with any occupants of the residence and ask them to step outside.  Dispatch was able to contact a female believed to be the daughter of the apartment owner.  The daughter (unknown name) advised dispatch that no one should be home, and that she would respond to the address.  Approximately 20 minutes later dispatch advised that the female was on scene.  I observed LT. Goodman speaking to a female that I believed to be the one dispatch had spoken with.  In addition to this female, several other individuals arrived and began to question why the police were there.  LT. Goodman informed me that there was a single female with a young child who was likely in # 42.  We decided to knock on the door and ask her to exit while the search warrant was being completed.  The female answered the door and stepped out onto the stoop while holding a young child.  The child was later determined to be 13 months old, and the daughter of Anthony Lobor.  The female advised that she was the mother of the child, and denied officers entry to the residence without a search warrant.  The female was advised that she could not return into the home until the search was done.

   I then assisted K-9 Officer Moore with an article search of the area of the foot pursuit in order to look for discarded items, specifically a discarded weapon.  The area was very densely populated with multiple apartment buildings and residential structures.  There were dozens of children playing outside in the immediate area; and there was a substantial concern that Anthony or the unknown male may have discarded a weapon while fleeing from officers.  Officer Moore along with his K-9 partner swept the area while I supplied security for them due to the unknown male with dreadlocks still being unaccounted for.  During the article search the K-9

indicated on a cellular phone that was in the rear / side yard of 76 Monument Street.  The cell phone was laying on top of a garden bed that was topped with black mulch.  The phone was clean, and appeared to be recently placed or thrown there.  The K-9 indicated on the phone and subsequently pawed at it causing the phone to become dirty prior to its collection.  76 Monument Street is on the  southwest corner of Monument Street at the intersection of Kellogg Street.  The back / side yard of this address is separated from the side yard of the 42 Kellogg Street complex by a chain link fence and shrubbery. The garden in the back / side yard of 76 Monument Street directly bordered the west sidewalk of Kellogg Street which was exactly where Anthony ran while attempting to evade the police.  It is highly likely that he discarded this phone during the foot pursuit.  Due to the number of people who had made their way to the area, I would estimate approximately 20-25 onlookers, many of whom appeared to be friends or family members of Anthony, I decided to collect the phone prior to an evidence technician arriving.  I was concerned that one of the onlookers who knew that we located the device would take it if I did not secure it; and I could not continue to assist the K-9 team until the phone was collected.  Due to this, I collected the phone without rubber gloves and placed it in a cargo pocket of my clothing so that I could continue to assist the K-9 with the article search.  I did attempt to place the phone in airplane mode, however it required a passcode so I was unable to do this.  I continued with the K-9 search until the area bordering the foot pursuit was checked completely for a weapon.  I then placed the found phone on the front seat of my vehicle until an evidence technician arrived.  When Evidence Technician Beals arrived on scene, I asked her to retrieve the two phones and money from my front passenger seat.  I informed her that the money had not been counted.  I was able to inform ET Beals which phone had been taken off of Anthony and which phone had been found in the garden based on their color; and where I placed them on the seat of the vehicle.  The phone that was recovered from the garden was black in color and was placed towards the rear upright portion of the passenger seat, the phone collected from Anthony was silver / gray in color and was placed more towards the front of the passenger seat with the collected money.  ET Beals documented the items on my seat and then secured them in the ET van.

 I remained at the front (Kellogg Street side) of the suspect address until the search warrant was delivered to the scene by Detective Curlee.  After the warrant was explained to the family, I assisted with checking the apartment for persons who may still be inside. Once the apartment was deemed secure, it was turned over to detectives to search.  I then assisted CID with this search.

 During the search for evidence I assisted Detective Curlee with searching a bedroom that was located on the second floor.  The bedroom was to the right hand side of the hallway when turning right from the stairwell.  In this bedroom I located a black and pink zippered bag under the bed.  I removed the bag and upon unzipping it I found it to contain two AR-15 style rifles.  It may have contained additional evidence, however upon locating the rifles I ensured that the safety's were on and did not further inspect the bag.  I located two black plastic cases that appeared to be similar to what a new handgun would be shipped in.  The cases were located to the right of the bedroom entry / exit door when looking at the door from the room.  They were between multiple shoe boxes that were stacked to each side of a bin they were in. This bin

contained ammunition boxes along with the two black cases.  I opened these cases and found one to contain a  22 caliber handgun. I did not get the manufacturer name off of the weapon due to not wanting to handle it.  I determined it was a 22 caliber based on the visible rounds that were contained in the loaded magazines stored in the case with the weapon.  The other case was labeled by the company Springfield. I know this to be Springfield Armory, and it contained magazines for what I believe is a 9mm handgun, however there was no handgun present in the case.. I based the caliber of the weapon on viewing the ammunition in a magazine that was in the case.  I did not manipulate or hold the magazine, however the size and shape of the ammunition had a consistent appearance of a 9mm.  I was present in the room when Detective Curlee located a Springfield XD handgun which was loaded and hanging out of a jacket pocket in an open style closet that had no doors.  I located a holster that was on a desk to the right side of the room when you walk into the room from the entry door.  I did not manipulate the holster and left it in place for documentation and collection.

   Upon completing the search of this room, I briefly returned to PPD headquarters to change out of the clothing I was in.  I then returned to the scene and stood by with the bags of evidence that had been placed on the first floor at the base of the stairwell.  I helped move this evidence to the ET van to be secured.  I then waited outside until the remaining detectives exited the residence.

    While outside, I asked Detective Curlee if anyone had searched the two trash / recycling bins that were located just to the right of the main entry door of # 42.  Due to their placement, the trash cans clearly belonged to the structure that the search warrant was issued for.  Upon being advised that the cans had not been checked, I started to search the blue recycling bin that was to the left of a black trash bin when looking at the structure from the street.  I removed the contents of the recycling bin and found nothing of evidentiary value.  I searched the black trash bin and found nothing inside of it.  During this time Officer Craig Knight made a comment about a bag being behind it.  At that time he picked the bag up and I heard Detective Curlee immediately tell him to put it down.  Detective Curlee then informed me that he had observed a handgun in the white plastic bag.  I then looked into the bag without touching or manipulating it.  I could see a black FN 5.7 pistol sitting in the bag along with what appeared to be a fifth size bottle of alcohol, and a nip size bottle of alcohol that had the exact same appearance on the bottle as the ones I observed next to Anthony when he was taken into custody; and that he had asked to consume.

    I am familiar with the FN 5.7 platform.  I have been a PPD firearms instructor for over 23 years; and have been a member of the Special Reaction Team for over 15 years.  Through this training and experience I have had contact with the FN platform and know it to have distinct visual features that set it apart from most other handguns.  This weapon is the only handgun produced known to effectively defeat body armor.  Upon being processed and secured by ET Beals and Detective Curlee, it was later found to be loaded with a bullet in the chamber.  This weapon had been purposely left outside on the ground within the reach of multiple young children who had been playing in the area.  Some of the children, including Anthony's own

daughter, were young enough to have no idea what they would be playing with if they found the weapon.  This put all of the children in the area in potential danger.

Sergeant Michael Rand
07/11/24

USAO-000469